## STATE OF FLORIDA v GENDREAU, et al. (Consolidated Cases)

### Case No. 85-245 AC (Consolidated)

Eleventh Judicial Circuit, Appellate Division, Dade County

September 10, 1986

### APPEARANCES OF COUNSEL

Jim Smith, Attorney General, **Richard E. Doran, Richard L. Kaplan, Mark J. Berkowitz, Susan Odzer Hugentugler, Michele L. Crawford, Debora J. Turner,** and **Nancy C. Wear,** Assistant Attorneys General, **Steven Glerum and Jerome,** for appellants.

**Bennett H. Brummer,** Public Defender, **Howard K. Blumberg** and **Karen Gottlieb,** Assistant Public Defenders, **H. Frank Rubio,** and **Paul M. Rashkind** for appellees.

Before Simons, Kaye, Mastos, JJ.

MASTOS, Judge.

The State of Florida, appellant in seven of the eight cases consolidated herein, appeals from a Motion to Suppress granted by the trial court. In essence, the trial court held that the failure to keep a running log for the field testing device, known as the Indium Crimper, did not constitute substantial compliance with Health and Rehabilitative Service Rule 10D-42.24(14)(a). This rule sets out what information is required to maintain a log book.

It should be noted that HRS Chapter 10D-42, entitled Implied Consent, contains various rules and regulations promulgated to implement, inter alia, Florida Statutes 316.1932, 316.1933 and 316.1934. These rules and regulations are intended to govern the collection and chemical testing of breath and/or blood samples for alcohol content.

In holding that the failure to maintain per se a log book on the Indium Crimper device violates the above cited HRS rule, the trial court, through its order of suppression, has blocked admissibility of the breathalyzer reading in all of the consolidated drunk driving cases pending before this court. Accordingly, the State of Florida seeks a reversal of the lower court's order.

It is undisputed between the parties that a log book which complies with the applicable HRS rules and regulations governing the chemical testing of breath samples was kept and maintained on the machine which performed the actual chemical analysis of the breath sample. The reliability of the test results obtained during the actual chemical analysis was, in addition, not in issue in the lower court.

What is in issue, then, is the rather narrow question of whether the same log book requirements governing the machine which chemically analyzes the breath sample should also apply to the Indium Crimper device which encapsulates the breath sample which, in turn, is later chemically analyzed by a separate and distinct laboratory process. We think not.

First of all, it must be kept in perspective what the Crimper device does. It simply collects the breath sample; it does *not* chemically analyze it.

The Indium Crimper consists of a heated, thermostatically controlled box enclosing a crimping tool consisting of four precisely aligned heated jaws which are made to move by compression externally mounted handles, like a pair of pliers. The sample is captured in a tube made of the medal indium. This is held in proper alignment with the

**157**

jaws by a template. When the jaws are compressed, they flatten and melt the metal tube in four places to produce three sealed "pillows" or packets of breath. These pillows are analyzed in a specially designed gas chromatograph which automatically pierces the metal and flushes the sample into the column. See Pellegrino, Nichols, Hearn, *Defending the Drunk Driving Charges in Florida*, at 319-320 (1984).

The records, briefs and the concessions made at oral argument failed to disclose that any possible malfunction in the Crimper process would do anything but inure to the defendant's benefit. For example, a failure to encapsulate the breath sample, i.e. a lead, would leave nothing to be analyzed by the gas chromatograph. Accordingly, a defendant could not claim prejudice in any way if the Crimper device malfunctioned.

Secondly, the record reveals that while a log book per se was not maintained on the Indium Crimper device, the officer on the scene must, nonetheless, record certain information such as the defendant's name, case number, time of first observation for the Crimper investigation, the time of encapsulation of the breath sample, the results of accompanying physical tests, and notation of a video tape recording made simultaneously with the entire testing process. This type of information, with the exception of the date of the last preventative maintenance, is precisely what HRS rule 10D-42.24(14) mandates. The collection of the above mentioned data is tantamount to the keeping of a running log book.

Accordingly, the limited function of the Crimper, i.e. collection of the breath sample, together with the simultaneous reporting process which is tantamount to keeping a lot and the fact that the required and mandated log is kept for the instrument or machine which chemically analyzes the encapsulated breath sample, taken as a whole, constitutes substantial compliance, within the meaning of Florida Statute 316.1934(3). The Order of Suppression of the trial court is hereby reversed and remanded.

For the above stated reasons Case #85-209, Barry Imber, Appellant, versus the State of Florida, is affirmed in all respects.

Appellee/Cross Appellant Jacqueline Richie's appeal of a denial of a motion to suppress statements by the trial court is hereby affirmed in all respects on the authority of *Nyflot v. Minnesota Commissioner of Public Safety*, 369 N.W.2d 517 (1985), appeal dismissed by the United States Supreme Court, 106 S. Ct. 586 (1985) and *The State of Florida v. Altamirano*, Case no. 85-028 AC.

Accordingly, all cases consolidated herein are hereby remanded to the trial court for proceedings consistent herewith.